UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANTONIO PATINO,

Plaintiff,

v.

CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, et al.,

Defendants.

Case No. 25-cv-04653-EKL

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT IN PART**

Re: Dkt. No. 23

Plaintiff Antonio Patino alleges that Defendant Tyler Hickey, a peace officer of Defendant California Department of Forestry and Fire Protection ("CAL FIRE"), unlawfully detained him and used excessive force in that detention. Defendants move for summary judgment on the basis that Hickey had probable cause to detain Patino and used reasonable force against him. Mot. for Summ. J., ECF No. 23 ("Mot."). The Court carefully reviewed the record and heard argument on July 24, 2026. For the following reasons, the motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

On March 17, 2024, Patino was driving on California State Route 17 toward the beaches of Santa Cruz with his friend, Michael Garcia, and his dog, a large German shepherd, when Hickey, a uniformed peace officer of CAL FIRE's law enforcement division, observed that Patino's license plate had an expired registration. Mot. at 1; Def. Facts 1, 3, 5.[1] Hickey claims that Patino was weaving in between cars and driving at approximately 80 miles per hour, but Patino denies this behavior. Def. Fact 2. Hickey activated his emergency siren and lights, and Patino pulled over into a turnout. Def. Fact 4.

[1] All facts are undisputed unless otherwise noted. *See* Def. Statement, ECF No. 24-3 ("Def. Fact"); Plf. Statement, ECF No. 28-1 ("Plf. Fact"); *see also* Def. Exhibits, ECF No. 23-3.

United States District Court
Northern District of California

Hickey approached the vehicle, observed the two men and the dog, and then introduced himself as "Officer Tyler Hickey[,] a police officer from CAL FIRE." Def. Facts 5-6. Hickey asked Patino to provide his driver's license, registration, and proof of insurance; although Patino possessed these documents, he refused to provide them. Def. Facts 7-8. In response to Hickey's request, Patino stated that he would not provide the documents until Hickey began (or completed) writing a citation. Def. Facts 9-10. Hickey then stated that he would arrest Patino if he did not provide his license. Def. Fact 11. The parties dispute other aspects of what was said during this interaction and the precise sequence of events that followed. *See* Def. Facts 11, 13-15.

Hickey ordered Patino out of the vehicle and requested backup over the radio. Def. Facts 14-15. Hickey opened Patino's front driver-side door, and Patino's passenger, Garcia, began to record the encounter using Patino's phone. Def. Facts 17-18. Hickey again ordered Patino to exit the vehicle, stating: "Sir, like I said[,] because of your dog, I'm going to ask you to step out of the car, for both of our safeties. You're being pulled over for reckless driving, your speed, and your expired tags. Please step out of the car." Def. Fact 19. In his incident report summarizing the encounter, Hickey states that he "felt" that the dog "could" become agitated given the parties' elevated voices. Def. Ex. B at 4. However, Defendants presented no evidence that the dog growled, barked, lunged, or otherwise acted in a manner to suggest a safety risk to Hickey.

Patino asked Hickey to explain himself, and Hickey again demanded that Patino exit the vehicle, stating: "Sir, step out of the vehicle. . . . I'm not going to ask you again. . . . Step out." Def. Facts 20-21. Patino did not exit the vehicle, and Hickey grabbed Patino's left arm and wrist in a bent wrist control hold. Def. Fact 22. Hickey lifted Patino out of the vehicle by his bicep, and Patino ended up on the ground, the cause of which is disputed. Def. Fact 24. Patino claims that Hickey "forced" Patino to the ground in a take-down maneuver, while Hickey claims that Patino rolled out of the vehicle onto the ground. Plf. Facts 5, 7; Def. Fact 24. Defendants claim that Patino landed on his hip at first and then Hickey rolled him to a prone position, but Patino does not recall if he landed hip-first. Def. Fact 25. The video does not substantiate either account, as the moment of impact was obstructed. *See* Def. Ex. D. During Hickey's use of force, Patino did not resist arrest by pulling away from Hickey or attempting to run. Plf. Fact 3.

Hickey handcuffed Patino, stood him up, checked and then double-locked the handcuffs, sat Patino down, and asked for his name and birth date. Def. Facts 26-29. Hickey claims that he also checked the handcuffs and repositioned them to be in a more comfortable position, but Patino denies this. Def. Fact 27. Patino again refused to provide the requested information. Def. Fact 30. Hickey asked for permission to enter Patino's vehicle to retrieve Patino's wallet and license, but Patino refused. Def. Fact 31. Hickey informed Patino that the final option was to take Patino to jail to verify his identity, to which Patino responded that he would provide his information if Hickey began the citation. Def. Fact 32. Hickey then wrote the violation and date on the citation, and Patino stated his name as "Antonio Patino" and provided his birthdate and address. Def. Fact 33. Hickey confirmed that the vehicle's registration was expired but he was not able to find a valid driver's license under the name "Antonio Patino." Def. Fact 34. Patino stated that the handcuffs were hurting his wrists, asked for them to be removed, and asked for a supervisor. Def. Fact 36. Hickey denied the request and said that the handcuffs would only be removed once the citation was completed. *Id.* Hickey assisted Patino up, and Patino stated that his shoulder and wrist hurt, but he declined medical attention. Def. Facts 38, 40. Hickey removed the handcuffs so Patino could sign the citation. Def. Fact 41.

Hickey then issued citation No. Cf 242577 to Patino for violations of California Vehicle Code sections 4000(a)(1) (driving with expired registration), 12951(b) (failure to present driver's license), and 12500(a) (driving without a valid license). Def. Fact 42. The encounter lasted no more than 35 minutes. Def. Fact 45. Patino claims that all charges were later dropped, but Defendants claim that Patino has merely entered judicial diversion and that the charges have not been dropped. Opp. at 6, ECF No. 24; Reply at 10, ECF No. 28.

Patino alleges that he has suffered ongoing neck and back pain because of the encounter that, at times, reaches a seven out of ten on the pain scale. *See* Plf. Ex. 1 at 24:19-26:16, ECF No. 25. He has visited a chiropractor as a result of this pain but has not seen any other medical provider. *Id.* at 26:17-29:5.

On September 20, 2024, Patino filed suit against Defendants in Santa Clara County Superior Court. Notice of Removal at 2, ECF No. 1. The case was removed to this Court on June

United States District Court
Northern District of California

2, 2025. *Id.* Patino asserts five causes of action: (1) 42 U.S.C. § 1983 (unreasonable detention); (2) 42 U.S.C. § 1983 (excessive use of force); (3) violation of the Tom Bane Civil Rights Act, Cal. Civ. Code § 52.1 ("Bane Act"); (4) negligence; and (5) battery. Patino also seeks punitive damages against Hickey. Defendants move for summary judgment on all claims, contending that Hickey had probable cause to detain Patino and used reasonable force.

## II. LEGAL STANDARD

A court may grant summary judgment on any issue, claim, or defense if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may satisfy this burden in different ways depending on whether it has the burden of proof at trial. If the moving party bears the burden of proof at trial, it must cite to "particular parts of materials in the record" to demonstrate that no reasonable trier of fact could find for the non-moving party. Fed. R. Civ. P. 56(c)(1)(A). By contrast, if the non-moving party bears the burden of proof at trial, the moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325; *see also* Fed. R. Civ. P. 56(c)(1)(B).

Once the moving party has met its burden, the burden shifts to the non-moving party to designate specific facts showing that there is a genuine dispute. *Celotex*, 477 U.S. at 324. To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient" to survive summary judgment. *Anderson*, 477 U.S. at 252. Instead, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.*

In determining whether there is a genuine dispute of material fact, the court must take "the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011). The court does not "engage in credibility determinations or weigh evidence." *Munden v. Stewart Tit. Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *see also* Fed. R. Civ. P. 56(c)(3).

At summary judgment, the focus is not "on the admissibility of the evidence's form," but rather "on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rule[] of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). An affidavit or declaration "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## III. DISCUSSION

Defendants argue that Hickey undisputedly had probable cause to stop and continue detaining Patino due to the expired registration and his refusal to comply with lawful orders, thus foreclosing the unreasonable detention claim under § 1983. Defendants further argue that the use of force against Patino was reasonable, thus foreclosing the § 1983 excessive use of force claim, the Bane Act claim, and the negligence and battery claims. Defendants also contend that no reasonable jury could award punitive damages. The court addresses each issue in turn.

### A. 42 U.S.C. § 1983

To prevail on a § 1983 claim, a plaintiff must establish a "deprivation of a right secured by the federal Constitution or statutory law," and that the deprivation "was committed by a person acting under color of state law." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). Because it is undisputed that Hickey acted under color of state law, *see* Mot. at 6, the only

United States District Court
Northern District of California

question is whether a reasonable jury could determine that Patino was deprived of a federal right. Patino claims two separate violations of § 1983: unreasonable detention and excessive use of force. The Court grants summary judgment for the unreasonable detention claim because Hickey undisputedly had probable cause to stop and detain Patino. However, whether Hickey forcibly took Patino to the ground is a genuine dispute of material fact that precludes summary judgment on the excessive force claim. Additionally, Hickey is not entitled to qualified immunity for the excessive use of force claim because the right to be free from non-trivial force for passively resisting an officer was clearly established at the time of the incident.

**1. Unreasonable Detention**

A claim under § 1983 for unreasonable detention regarding an initial detention or arrest requires the plaintiff to show that there was no probable cause for the detention or arrest. *See Dubner v. City & County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001) ("A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification."). In addition, where the officer has a valid investigative purpose and was diligently investigating his suspicions during the detention, the length of the detention generally does not violate the Fourth Amendment. *See Liberal v. Estrada*, 632 F.3d 1064, 1080 (9th Cir. 2011), *abrogated on other grounds by*, *Hampton v. California*, 83 F.4th 754 (9th Cir. 2023). Whether the plaintiff's "actions contribute to the added delay" is also relevant. *Id.* (quoting *United States v. Sharpe*, 470 U.S. 675, 688 (1985)).

Patino did not meaningfully address his unreasonable detention claim in opposition to Defendants' motion and, at the motion hearing, confirmed that he does not oppose summary judgment on this claim. Patino "does not dispute that there was probable cause for the initial stop arising from the expired registration." *See* Opp. at 16. Thus, he cannot claim that the initial detention was unreasonable under the Fourth Amendment. *See Dubner*, 266 F.3d at 964-66. Additionally, it is undisputed that Hickey had a valid investigatory purpose in continuing to detain Patino for the expired registration and subsequent refusals to comply with lawful orders. *See* Def. Facts 3, 8, 19-21. Indeed, the resulting detention was necessary due to Patino's noncompliance. Hickey repeatedly asked Patino for the required information, showing Hickey's diligence in

investigating the matter. *See* Def. Facts 7, 10, 12, 13, 29, 31-32. Once Patino provided the relevant information, he was released.

Accordingly, Hickey's 35-minute detention of Patino was not unreasonable under the Fourth Amendment, and the Court therefore GRANTS summary judgment with respect to the § 1983 unreasonable detention claim.

**2. Excessive Use of Force**

Under the Fourth Amendment, an excessive use of force claim is analyzed under an objective reasonableness framework. *Graham v. Connor*, 490 U.S. 386, 397 (1989). This inquiry requires courts to judge a given use of force under the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396; *Bryan v. MacPherson*, 630 F.3d 805, 823 (9th Cir. 2010). When determining the objective reasonableness of a use of force, courts must balance "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Bryan*, 630 F.3d at 823 (quoting *Graham*, 490 U.S. at 396). In evaluating the governmental interest, courts examine "three core factors, 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* at 826 (quoting *Graham*, 490 U.S. at 396). Courts also examine all other factors that may be appropriate under the totality of the circumstances. *Id.* "Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994).

**a. The nature and quality of the intrusion**

Here, Patino challenges Hickey's use of force in employing a take-down maneuver when removing Patino from his vehicle. Opp. at 16. "[C]haracterizing the amount of a non-lethal force [in a take-down] can often depend on specific factual circumstances" and may be considered substantial depending on those circumstances. *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021); *see Santos v. Gates*, 287 F.3d 846, 848-49, 853 (9th Cir. 2002), *overruled on other grounds by*, *Pearson v. Callahan*, 555 U.S. 223 (2009). The plaintiff's injuries following a take-down are

United States District Court
Northern District of California

relevant in determining the nature and quality of the intrusion, but injury is only a proxy for determining the severity of the force; a plaintiff may rely on other evidence, including video, to demonstrate severity. *See Hulet v. County of Tuolumne*, No. 1:23-CV-01217-KES-HBK, 2025 WL 1117054, at *6 (E.D. Cal. Apr. 14, 2025).

Several cases involving take-down maneuvers are illustrative. In *Rice*, the plaintiff was pulled out of his vehicle and tripped with his arms held back so that he fell face-first onto the pavement, causing long-term facial injuries. 989 F.3d at 1117, 1121. The court held that the take-down was a "'substantial' and 'aggressive use' of force." *Id.* at 1121. In *Santos*, the plaintiff was taken to the ground by officers and suffered a fractured vertebra. 287 F.3d at 848-49, 853. The court held that the force could be viewed as substantial and excessive in light of the plaintiff's "serious injury." *Id.* In *Hulet*, an officer wrapped his arm around the plaintiff's neck, grabbed him by the legs, lifted him in the air, and flipped him onto his back. 2025 WL 1117054, at *3. The court held that the take-down was a "substantial use of force" even though the plaintiff did not provide any "objective findings of significant injury" beyond activation of chronic back pain because video evidence showed that the use of force was substantial. *Id.* at *6. Finally, in *Meredith v. Erath*, an IRS agent grabbed the plaintiff by her arms, "forcibly threw her to the ground and, twisting her arms, placed handcuffs on her wrists." 342 F.3d 1057, 1060 (9th Cir. 2003). The plaintiff suffered extensive bruising due to the handcuffs, which were left tight for 30 minutes. *Id.* The court held that the amount of force used in the handcuffing could be viewed as unreasonable. *Id.* at 1061.

Although less severe than the force used in *Rice* or *Santos*, Hickey's take-down may constitute substantial force. Patino has produced sufficient evidence to create a triable issue as to whether the force was substantial because it resulted in persistent neck and tailbone pain, sometimes reaching seven out of ten on the pain scale. *See* Ex. 1 at 24:19-26:16; Plf. Facts 7, 14. These injuries are comparable to the bruising in *Meredith* and the back pain in *Hulet*. Additionally, as in *Hulet*, the presence of video evidence could further support a finding of substantial force. Evaluation of the video evidence in this case is best left to a jury. The Court now turns to whether the alleged intrusion was justified by the governmental interests at stake.

**b. The governmental interests at stake**

In evaluating the governmental interest in Hickey's use of force, the Courts considers the severity of Patino's crime, whether Patino posed an immediate threat to the safety of Hickey or others, and whether Patino was actively resisting arrest or attempting to evade arrest by flight. *Bryan*, 603 F.3d at 826.

The first factor – the severity of the crime – weighs against the use of substantial force. Patino was cited for driving with an expired registration, failure to present a driver's license, and driving without a valid license. Def. Fact 42. Minor traffic violations like these are not severe crimes and "generally will not support the use of a significant level of force." *Bryan*, 630 F.3d at 828; *see Rice*, 989 F.3d at 1123. Failure to comply with a police officer's orders during a traffic stop is also not a serious crime. *See Bryan*, 630 F.3d at 828-29; *Rice* 989 F.3d at 1123.

The second factor – whether the plaintiff posed an "immediate threat to the safety of the officers or others" – is the "'most important' factor under *Graham*." *Bryan*, 630 F.3d at 826 (quoting *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)). Generally, unless a plaintiff makes verbal or physical threats, merely refusing to comply with an officer's orders during a traffic stop does not reasonably suggest that the plaintiff poses an immediate threat. *See Bryan*, 630 F.3d at 826-27; *Rice*, 989 F.3d at 1122-23. For example, in *Rice*, the court found that the plaintiff did not pose an immediate threat in a traffic stop when he refused to provide requested documentation and refused to exit his vehicle but did not verbally or physically threaten the officers. *Rice*, 989 F.3d at 1116, 1122-23. As in *Rice*, here the record does not reflect that Patino made any verbal or physical threats to Hickey. Indeed, Patino made no affirmative movement and did not yell or swear at Hickey before Hickey applied force. *See* Plf. Fact 3. Accordingly, Patino was not an immediate threat to Hickey or others, which weighs against using substantial force.[2]

[2] The Court recognizes that police officers encounter dangerous situations during traffic stops, but the threat to the officer must be considered on a case-by-case basis. In this case, Defendants rely on hyperbole and speculation, not evidence. *See* Reply at 7 (hypothesizing without basis that Patino may have been "trying to distract Captain Hickey so that he could grab hold of a weapon"). Defendants also note the presence of the large dog, *id*. at 5-6, yet they produced no evidence that the dog acted in a threatening manner. Whether the presence of the dog contributed to the governmental interest in Hickey's use of force is a question for the jury.

United States District Court
Northern District of California

The third factor – whether Patino was actively resisting arrest or fleeing – also weighs against the use of substantial force. In this context, "resistance" is a spectrum that runs "from the purely passive protestor who simply refuses to stand, to the individual who is physically assaulting the officer." *Bryan*, 630 F.3d at 830. Active resistance typically requires an affirmative act that interferes with or physically resists the officer's lawful actions, and thus refusal to comply with an officer's lawful order is not active resistance. *See Jackson v. City of Bremerton*, 268 F.3d 646, 653 (9th Cir. 2001); *Nelson v. City of Davis*, 685 F.3d 867, 881-82 (9th Cir. 2012) (discussing examples of passive resistance and active resistance). For example, in *Rice*, the court found that the plaintiff's refusals to exit the vehicle and provide his documents were "far closer" to passive resistance than even to minor resistance. 989 F.3d at 1123. Like the plaintiff in *Rice*, Patino refused to comply with an officer's lawful order during a traffic stop when he did not provide documentation or exit his vehicle. Def. Facts 8-14, 19-21. Therefore, a jury could find that Patino's actions were passive resistance.

Finally, the Court may consider other factors in determining the government's interest, including whether other tactics were available to the officer and whether the officer warned the plaintiff about the subsequent use of force. *See Bryan*, 630 F.3d at 831; *Hulet*, 2025 WL 1117054, at *9. For example, in *Bryan*, the officer was aware that more officers were on the way, and those officers would provide other "ways to resolve the situation without the need" for tasing the plaintiff. *Id.* at 831. Additionally, the officer failed to warn the plaintiff that he would be tased if he did not remain in the vehicle. *Id.* The court determined that both factors significantly weighed against the reasonableness of the use of force. *Id.* In *Hulet*, jail officers warned the plaintiff that they would take his clothes off for him if he continued to refuse to strip. *Hulet*, 2025 WL 1117054, at *9. Though this statement provided warning that force would be used, it did not appropriately warn the plaintiff regarding the level of force. *Id.* The court took consideration of this lack of appropriate warning in balancing the *Graham* factors. *Id.*

Like the officer in *Bryan*, Hickey was aware that that backup was on the way. *See* Def. Fact 15. Therefore, a jury could find that he should have been aware that waiting for the other officers to arrive would provide tactical options outside of forcibly removing Patino and

performing a take-down maneuver. In addition, Hickey provided only a vague warning to Patino that force might be used when he said, "I'm not going to ask you again." Def. Fact 21. This warning is similar to the one in *Hulet* because Hickey alluded to the use of force but did not indicate the level of force or that a take-down would be used. Therefore, both factors weigh against the government's interest in Hickey's take-down.[3]

In sum, based on the record before the Court, a reasonable jury could find that the government had minimal interest in the use of force against Patino. Patino's crimes of driving with an expired license plate and refusing to provide his information and exit his vehicle are minor; he did not threaten or yell at Hickey, or otherwise act in a threatening manner; and he did not actively resist Hickey. Additionally, Hickey could have waited for backup, and he did not adequately warn Patino that a take-down would be performed.

**c. Balancing the interests**

The third step of the *Graham* inquiry is to balance the force used against the governmental interests. *See Bryan*, 630 F.3d at 831-32. As discussed, Hickey's use of force could be considered substantial, and the government had a minimal interest in using such force. Accordingly, a reasonable jury could conclude that the take-down maneuver was an excessive use of force that violated Patino's Fourth Amendment right against unreasonable seizure. *See Rice*, 989 F.3d at 1124 ("[O]n balance, a reasonable jury could find that the state's minimal interest in the use of force against [the plaintiff] did not justify the 'substantial force' used against him.").

**3. Qualified Immunity**

Next, the Court considers whether Hickey is entitled to summary judgment based on qualified immunity. The doctrine of qualified immunity protects government officials from § 1983 lawsuits "unless their conduct violates clearly established law." *Zorn v. Linton*, 146 S. Ct.

[3] At the motion hearing, Defendants argued that expecting Hickey to wait for backup, or to provide a clearer warning before using force, inappropriately judges Hickey's conduct with "the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. But the Ninth Circuit recognizes that these are appropriate considerations in evaluating the government's interest, *Bryan*, 630 F.3d at 831, and Hickey can present evidence at trial to support his position that he lacked reasonable alternatives. In any event, there is a genuine dispute as to the excessive use of force even without considering these additional factors.

926, 930 (2026). Qualified immunity is therefore a two-part inquiry: whether the facts show that the officer violated a constitutional right, and whether the right was "clearly established" in the context of the case. *Rice*, 989 F.3d at 1120. "To be clearly established," a "right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 1125 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Because excessive use of force analysis is extremely fact-dependent, there must be existing precedent that "squarely governs" the conduct at issue, and that precedent must either be controlling or embraced by a consensus of courts outside the jurisdiction. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)); *Wilson v. Layne*, 526 U.S. 603, 617 (1999). Though the precedent "must have placed the statutory or constitutional question beyond debate," courts do not require an identical prior case to determine that a right was clearly established in each instance. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

As discussed, a reasonable jury could determine that Hickey violated Patino's Fourth Amendment right against unreasonable seizure in taking Patino to the ground, thus satisfying prong one of the qualified immunity inquiry. *See supra* Section III.A.2. Next, the Court turns to the question of whether this action violated a clearly established right.

The "right to be free from the application of non-trivial force for engaging in mere passive resistance" has been clearly established since at least 2008. *Gravelet-Blondin*, 728 F.3d at 1093. The Ninth Circuit has expressly recognized this right in the context of a traffic stop take-down. *See Rice*, 989 F.3d at 1125-27. In *Rice*, the Ninth Circuit found that the question of whether the take-down used in that case violated the plaintiff's constitutional rights was "beyond debate." *Id.* at 1126. Though Hickey's take-down of Patino did not produce physical harm equivalent to that seen in *Rice*, the level of injury produced from the use of force is merely a proxy for the amount of force used. *See Hulet*, 2025 WL 1117054, at *6. As the Court determined above, a jury could reasonably view Patino's take-down as substantial in light of Patino's testimony that he suffers chronic pain that, at times, reaches seven out of ten on the pain scale. *See* Ex. 1 at 24:19-26:16. Thus, the Court cannot conclude as a matter of law that Hickey's use of force was trivial.

United States District Court
Northern District of California

Additionally, as discussed above, a jury could find that Patino was engaged in passive as opposed to active resistance. Therefore, Patino was subjected to non-trivial force for engaging in passive resistance, and Hickey is not shielded by qualified immunity.

Defendants argue that there are factual differences between this case and the precedent cases like *Rice*, such that Patino's right to be free from non-trivial force was not clearly established. Reply at 5-6. Specifically, Defendants argue that the presence of a large dog and another adult male in the vehicle is not accounted for in any precedent case, and that *Rice* is materially different due to the presence of numerous officers and the lack of a "tense circular standoff." *Id.* at 5. However, courts do not require a perfectly analogous case to determine that a right was clearly established in a particular factual scenario. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[It is] clear that officials can still be on notice that their conduct violates established law even in novel factual circumstances."). The Ninth Circuit in *Rice* concluded that the right to be free from non-trivial force for passively resisting was clearly established even though prior cases addressing that right involved different factual scenarios. *See Rice*, 989 F.3d at 1126 (discussing *Bryan*, 630 F.3d at 822, 826-30). Compared to the differences between *Rice* and the cases it cites in determining that the right was clearly established, the differences between the case at hand and *Rice* are significantly narrower. Both the *Rice* plaintiff and Patino refused to provide documentation, refused to exit their vehicle, and were taken down as a result. Therefore, the Court concludes that Patino's right to be free from non-trivial force for passively resisting was clearly established, as recognized by *Rice* and the cases it cites.

In sum, because a reasonable jury could determine that the use of force was excessive and because Hickey is not entitled to qualified immunity, the court DENIES summary judgment with respect to the § 1983 excessive use of force claim.

**B. Bane Act**

To state a claim under the Bane Act, a plaintiff must show both an "intentional interference or attempted interference with a state or federal constitutional or legal right" and that "the interference or attempted interference was by threats, intimidation or coercion." *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015). "The elements of a Bane Act claim are essentially

identical to the elements of a § 1983 claim, with the added requirement that the government official had a 'specific intent to violate' a constitutional right." *Hughes v. Rodriguez*, 31 F.4th 1211, 1224 (9th Cir. 2022) (quoting *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018)).

A showing of specific intent requires two findings: first, that "the right at issue [is] clearly delineated and plainly applicable under the circumstances of the case," and second, that "the defendant commit[ted] the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right." *Sandoval v. County of Sonoma*, 912 F.3d 509, 520 (9th Cir. 2018) (quoting *Cornell v. City & County of San Francisco*, 17 Cal. App. 5th 766, 803 (2017)). In the context of an excessive use of force claim, specific intent requires that the defendant "intended not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, 888 F.3d at 1045 (citation modified). If the constitutional violation is sufficiently egregious, the violation itself may reveal specific intent; otherwise, a finding of specific intent typically requires other facts indicating spite or falsification of evidence. *Id.* at 1043; *see Ramirez v. City of San Jose*, No. 21-CV-08127-VKD, 2022 WL 3139521 at *9 (N.D. Cal. Aug. 5, 2022); *Hughes*, 31 F.4th at 1216, 1224.

As discussed above with respect to Patino's § 1983 claim, the right to be free from excessive force in this scenario is clearly delineated and plainly applicable. Therefore, the Court focuses on whether the facts permit a finding that Hickey committed the take-down with the particular purpose of depriving Patino of his protected interests. Several cases persuade the Court that there is no triable issue as to specific intent here.

*Hughes* offers an example where the constitutional violation by itself was sufficiently egregious to permit a finding of specific intent. In that case, the plaintiff was attacked by a police dog while the officers punched him in the head, and the biting and punching continued after he was handcuffed. *Id.* at 1216-17. A reasonable jury could conclude that attacking the plaintiff after he was handcuffed was excessive, and the question of specific intent was "properly reserved for the trier of fact." *Id.* at 1224. Similarly, in *Chinaryan v. City of Los Angeles*, the officers conducted "high-risk" stops involving a dozen officers and ordered the plaintiffs out of a vehicle

at gunpoint "as a matter of routine," regardless of whether such force was needed. 113 F.4th 888, 893, 907-08 (9th Cir. 2024). Here, by contrast, the single take-down and handcuffing of Patino was not so egregious that a reasonable jury could infer specific intent from Hickey's action alone.

Patino's claim is more analogous to the facts of *Ramirez*. In that case, the plaintiff alleged that he was stopped without probable cause by a police officer who approached his vehicle, opened the plaintiff's door without consent, and, upon the plaintiff exiting the vehicle, forced the plaintiff's hands behind his back in a manner that caused "significant pain." *Ramirez*, 2022 WL 3139521, at *1. The court dismissed the plaintiff's Bane Act claim due to lack of specific intent. *Id.* at *9. The court noted that successful Bane Act claims have had evidence demonstrating that the unconstitutional act included spite or falsification of evidence, while the plaintiff in *Ramirez* failed to allege such behavior. *Id.*; *see Cornell*, 17 Cal. App. 5th at 804 (finding specific intent where officers realized their error in detaining the plaintiff, but then, "out of spite," "doubled-down on it, knowing they were inflicting grievous injury on their prisoner"); *Watkins v. City of Oakland*, No. 17-CV-06002-JCS, 2018 WL 574906, at *13 (N.D. Cal. Jan. 26, 2018) (finding that plaintiff plausibly alleged specific intent based on fabrication of evidence).

Here, the record is devoid of evidence that Hickey acted with spite when he pulled Patino from the car and allegedly forced him to the ground. Patino argues that Hickey performed the take-down maneuver because he was "impatient and annoyed with Mr. Patino." Opp. at 10. But Patino's only support for this claim is the testimony of his purported expert, who opines that it was improper for Hickey not to warn Patino or wait for backup. Ex. 4 at 22:15-25, 23:1-17, ECF No. 27. This testimony does not and cannot speak to Hickey's intent.[4] Patino also notes that Hickey testified that "[t]here was no reason for [Patino] to be on the ground." Ex. 2 at 44:8-12. But Patino quotes Hickey's testimony out of context. Hickey did not testify that he knowingly

---

[4] Defendants object to the testimony of Patino's expert witness, Roger Clark. *See* Reply at 2-3. Specifically, Defendants note that many of Clark's opinions are "improper legal conclusions" and stray outside of his domain of expertise. *Id.* The Court need not resolve each of these objections for purposes of this motion because Patino has demonstrated a genuine dispute of material fact without relying on expert testimony. However, the Court will not consider Clark's testimony to the extent he opines on Hickey's specific intent or state of mind. *See Schroeder v. County of San Bernardino*, No. ED CV 18-427-DMG (JCx), 2019 WL 3037923, at *2 (C.D. Cal. May 7, 2019) (precluding Clark from offering "opinion on an officer's subjective intent").

used excessive force; rather, he denied any intent to bring Patino to the ground and testified that Patino hit the ground due to Patino's own movements. Even construing it as favorably as possible for Patino, Hickey's testimony does not evince specific intent to use unreasonable force. Additionally, it is undisputed that Hickey had probable cause to stop and detain Patino, and Patino does not argue that evidence was falsified in the lead-up to the use of force.

Because there are no facts suggesting that Hickey acted out of spite, falsified evidence, or otherwise acted egregiously in his use of force against Patino, no reasonable jury could find that Hickey acted with specific intent to violate Patino's rights under the Bane Act. Accordingly, the motion for summary judgment is GRANTED with respect to the Bane Act claim.

### C. Negligence and Battery

Patino brings two further California state law claims: negligence and battery. Defendants argue that the use of force was reasonable under the Fourth Amendment, and therefore the use of force was reasonable with respect to negligence and battery as well. The Court addresses these claims together.

Under California state law, a public employee is "liable for injury caused by his act or omission to the same extent as a private person." Cal. Gov't Code § 820. Peace officers have a duty to not use excessive force, and negligence in this context is measured by the same reasonableness standard as is excessive force under the Fourth Amendment. *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal.), *amended in part*, No. C 05-02935 MEJ, 2009 WL 10736653 (N.D. Cal. Sep. 8, 2009); *Olvera v. City of Modesto*, 38 F. Supp. 3d 1162, 1182 (E.D. Cal. 2014); *see also Young v. County of Los Angeles*, 655 F.3d 1156, 1170 (9th Cir. 2011) (recognizing that an excessive force Fourth Amendment violation "also suffices to establish the breach of a duty of care under California law" for purposes of a state law negligence claim). Similarly, a California state law battery claim against a peace officer is also evaluated under the Fourth Amendment's reasonableness standard, as officers are often required to use force that exceeds that which is allowed in self-defense under common law. *See Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527-28 (2009) ("A state law battery claim is a counterpart to a federal claim of excessive use of force."); *Abston v. City of Merced*, No. 1:09-CV-00511 OWW, 2011 WL

United States District Court
Northern District of California

2118517, at *16 (E.D. Cal. May 24, 2011) (denying summary judgment for a battery claim against a police officer because the court previously determined that a jury could find the officer's use of force unreasonable under the Fourth Amendment), *aff'd*, 506 F. App'x 650 (9th Cir. 2013).

Therefore, because the Court determined that a reasonable jury could find Hickey's use of force unreasonable under the Fourth Amendment, a reasonable jury may also find Hickey's force unreasonable in terms of negligence and battery. Accordingly, the Court DENIES the motion for summary judgment on the negligence and battery claims.

**D. Punitive Damages**

Defendants argue that the Court should not allow punitive damages claims to proceed against Hickey for the § 1983 and Bane Act claims, both because summary judgment should be granted on those claims and because there is no evidence of malice, fraud, or oppression on behalf of Hickey. Because the Court grants summary judgment on the § 1983 unreasonable detention claim and the Bane Act claim, punitive damages cannot proceed for those claims. However, Patino may pursue punitive damages with respect to the § 1983 excessive use of force claim.

Like in tort law, whether to grant punitive damages for a § 1983 claim depends on if the act or omission was "malicious, wanton, or oppressive," or if it involves reckless disregard for the rights of others. *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005); *Kyles v. Baker*, 72 F. Supp. 3d 1021, 1050 (N.D. Cal. 2014). Because denying summary judgment for excessive use of force requires finding that there is a genuine dispute over whether the force was reasonable, those same facts also create a similar dispute over whether the conduct was wanton, malicious, oppressive, or in reckless disregard. *See, e.g.*, *Fortson v. City of Los Angeles*, 628 F. Supp. 3d 976, 995 (C.D. Cal. 2022) ("[T]here is a dispute of material fact as to whether the Officer Defendants intended to hit Plaintiff, retaliate against her, or use excessive force. For similar reasons, there are genuine disputes of material fact regarding whether the Officer Defendants acted with an evil motive or intent or with malice."); *Warren v. Marcus*, 78 F. Supp. 3d 1228, 1252 (N.D. Cal. 2015) ("Given that Plaintiff has raised a triable issue as to the reasonableness of force used by Defendant, the court finds that the evidence is sufficient to create a triable issue as to Defendant's state of mind during the incident in question.").

Therefore, because the Court finds a triable issue as to whether Hickey's take-down of Patino was an excessive use of force, there is also a triable issue as to whether Hickey used force in a manner that was wanton, malicious, oppressive, or in reckless disregard of Patino's rights. Accordingly, the Court denies Defendants' motion for summary judgment as to Patino's request for punitive damages.

**E. Claims Against CAL FIRE**

Because Hickey is a CAL FIRE employee, CAL FIRE is liable for Hickey's actions insofar as Hickey is liable. *See* Cal. Gov't Code § 815.2(a). Therefore, because the Court grants summary judgment for the § 1983 unreasonable detention and Bane Act claims against Hickey, the Court also grants summary judgment on those claims for CAL FIRE. Conversely, because Patino has demonstrated a genuine dispute of material fact as to Hickey's liability for the remaining claims, summary judgment on those claims for CAL FIRE is likewise inappropriate.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS summary judgment in Defendants' favor with respect to Patino's claim under § 1983 for unlawful detention (count 4) and his claim for violations of the Bane Act (count 1). The motion is otherwise DENIED.

**IT IS SO ORDERED.**

Dated: July 27, 2026



Eumi K. Lee
United States District Judge